PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DR. MIN LI, | ) | |
| | ) | CASE NO. 4:13cv2435 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DR. QI JIANG, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Regarding ECF Nos. 4; 10] |

Pending before the Court is the Motion for Judgment on the Pleadings filed by

Defendants Dr. Qi Jiang ("Jiang") and Youngstown State University ("YSU") (collectively,

"Defendants").  ECF No. 4.  Also pending is Plaintiff Dr. Min Li's Motion to Supplement

Complaint *Instanter*.  ECF No. 10.  The Court has been advised, having reviewed the record, the

parties' briefs, and the applicable law.  For the reasons that follow, the Court grants Defendants'

motion in part, denies it in part, and grants Li's motion.

### I.  Background[1]

YSU hired Li in 2008 as a tenure track assistant professor in the Department of

Sociology, Anthropology and Gerontology.  ECF No. 1-1 at 3, ¶10.  Li became eligible for tenure

review in February 2012.  *Id.* at ¶13.  She satisfied all prerequisites necessary to become a

tenured faculty member.  *Id.* at ¶12.

On September 12, 2012, Li presented herself to the faculty for tenure review.  *Id.* at 4,

¶14.  All faculty voted in favor of her receiving tenure.  *Id.*  Defendant Jiang, the Chair of the

---

[1]  The background facts are taken from Li's Complaint.  In a motion for judgment on the
pleadings, the Court presumes all well-pleaded allegations to be true.  *See Tucker v.
Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

(4:13cv2435)

Sociology, Anthropology and Gerontology Department, congratulated Li on receiving a

unanimous vote for tenure on her first review.  *Id*.

Both Jiang and Li are Chinese.  ECF No. 11 at 13.  On September 14, 2012, Jiang sent an

email through her YSU email account which purportedly expressed certain of her racial and

political beliefs.  ECF No. 1-1 at 5, ¶15.  Li received the email and describes it as follows:

> The basic gist of the email involves historical tension between the Chinese and the
> Japanese dating back to World War II.  It described the Japanese using the
> pejorative term, "xiao reben," which translates to "little runts."  Dr. Jiang
> described herself as hating the "little runts" from "deep in her bones."  The email
> urged the recipients to not "buy any Japanese products from [then] on."  The
> email further described more diplomatic means as a "useless fart."

*Id*.  Jiang asked Li to forward the email to others in the Chinese Community.  *Id*. at ¶16.  Li

declined to do so.  *Id*. at ¶17.

Subsequently, Jiang referred to Li as a "betrayer" and began berating her.  *Id*. at ¶18.  "On

September 21, 2012 and continuing into the days thereafter," Jiang emailed YSU Dean Shearle

Furnish "three pages of broad and false allegations about Dr. Li's job performance, work, and

ethics."  *Id*. at ¶19.  Jiang accused Li of being a substandard and unethical professor.  *Id*.  In

December 2012, YSU denied Li's tenure application pursuant to Jiang's recommendation.  *Id*. at

¶20.  In April 2013, YSU informed Li that the denial of tenure was final.  *Id*. at 5, ¶22.  YSU

offered her a one-year non-tenure track position.  *Id*.

Li filed a lawsuit in the Mahoning County Common Pleas Court, asserting claims against

Defendants for discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§2000e, *et seq*., and Chapter 4112 of the Ohio Revised Code; for violations of the right to

2

(4:13cv2435)

freedom of speech and association under 42 U.S.C. § 1983; and defamation.[2]  *Id.* at 5-6.  Li also

alleges that YSU is liable based on the theory of respondeat superior and seeks punitive damages.

*Id.* at 7.  Defendants removed the case to the instant Court, ECF No. 1, then filed a motion for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## II.  Legal Standard

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is reviewed

under the same standard applicable to a motion to dismiss under Rule 12(b)(6).  *Tucker v.*

*Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  The Court must construe the

complaint in the light most favorable to the non-moving party, accept all factual allegations as

true, and make reasonable inferences in favor of the non-moving party.  *Total Benefits Planning*

*Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *In re*

*Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).  The complaint must "give the

defendant fair notice of what the claim is and the grounds upon which it rests."  *Nader v.*

*Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93

(2007)).  A motion brought pursuant to Rule 12(c) is appropriately granted "when no material

issue of fact exists and the party making the motion is entitled to judgment as a matter of law."

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v.*

*City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

---

[2]  Li also asserted claims against "John Does, Jane Does, and/or Entity Does One through
10 Inclusive."  ECF No. 1-1 at 1.

3

(4:13cv2435)

### III.  Discussion

**A.  Title VII Discrimination Claim**

**1.  Exhaustion of Remedies**

Defendants contend that Li failed to exhaust her administrative remedies because she did not obtain a right to sue letter from the Equal Employment Opportunities Commission ("EEOC") prior to bringing the Title VII claims. ECF No. 4 at 5. Li admits that at the time she filed her complaint and at the time Defendants filed their motion she did not have a right to sue letter. ECF No. 11 at 8. Li, however, states that she pleaded in her complaint that an EEOC investigation had been initiated, and that she has since that time received her right to sue letter. *Id*. *See also* ECF No. 10 (Li's motion to supplement complaint *instanter* with her EEOC right to sue letter).[3]

Generally, before filing a lawsuit alleging a Title VII claim, a plaintiff must file a charge with the EEOC and obtain a right to sue letter. *See Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001). A plaintiff's failure to obtain a right to sue letter prior to filing a lawsuit can be cured by obtaining the letter after a lawsuit is filed but before a court enters judgment dismissing the action, as long as the defendants are not prejudiced. *See Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 310 (6th Cir. 2000) (explaining that a right to sue letter is not a jurisdictional defect necessitating dismissal, but a condition precedent that may be cured). In the instant case, the Court has not entered judgment. And despite Defendants urging the Court not to

---

[3]  Li filed a motion for a two-week extension of time to respond to Defendant's motion, stating that she expected a right to sue letter to be forthcoming. ECF No. 8. The Court granted the motion. ECF No. 9.

4

(4:13cv2435)

permit Li to cure her pleading, Defendants do not describe how they would be prejudiced.  *See*

ECF No. 14 at 1-5.  Accordingly, the Court will permit Li to cure her complaint because she

obtained her right to sue letter prior to the Court entering judgment and Defendants have not

explained how they would be prejudiced.  *See Parry*, 236 F.3d at 310.

       In their reply brief, Defendants cite to a letter Li's counsel sent to the EEOC, dated

September 24, 2013.  *See* ECF Nos. 12-1 at 5;14 at 2-3.  Defendants argue that the letter belies

Li's assertion in her complaint, filed on September 23, 2013, that "[a]n investigation with the

EEOC was instituted by letter on September 23, 2013 and is pending."  *Id.* (citing ECF No. 1-1 at

5, ¶23).  Although it appears as though the letter to the EEOC was dated one day after the

complaint was filed, the letter contemplates contemporaneous filing of letter and complaint.  *See*

ECF No. 12-1 at 5 ("We are including a complaint to be filed with the Mahoning County Court

of Common Pleas.  Due to statutory requirement, we are also bringing an EEOC claim

contemporan[e]ous to it.").  The Court finds the arguable one-day discrepancy an insufficient

reason to dismiss Li's Title VII claims.

       Defendants also argue that Li's September 2013 letter sent to the EEOC was not a charge

because it was unverified.  ECF No 14 at 4.  They refer to a second, verified version Li submitted

to the EEOC on November 22, 2013.  *Id.*  They contend that this second, verified version does

not cure the initial unverified version.  *Id.*  Defendants rely on *Williams v. CSX Transp. Co., Inc.*,

643 F.3d 502 (6th Cir. 2011) in support of their argument.  They assert that *Williams* permits a

*pro se* litigant to cure an unverified filing with a later-filed, verified version, but indicate that Li

was not acting *pro se* at the time of her initial filing.  ECF No. 14 at 4.

(4:13cv2435)

In *Williams*, the Sixth Circuit stated,

> although the district court was correct that this filing was not initially verified, the district court overlooked a pertinent federal regulation: "A charge may be amended to cure technical defects or omissions, including failure to verify the charge...." 29 C.F.R. § 1601.12(b).  The statute is silent on whether a filing may be amended to cure technical defects, and the EEOC's interpretation is reasonable under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).  *See Edelman v. Lynchburg College*, 535 U.S. 106, 110, 114, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002) (giving *Chevron* deference to this same regulation).  Williams signed her second EEOC filing, the "Charge of Discrimination" (discussed in more detail below), under penalty of perjury and, thus, verified it.  For the technical purpose of verification, we conclude that Williams's second filing amended—and verified—her first filing. This result is only fair in light of the fact that nowhere did the "Charge Information Form" suggest that Williams needed to sign it under penalty of perjury, and Williams was proceeding *pro se* at the time.

*Id.* at 509.  Although the Court in *Williams* explained that the plaintiff was proceeding *pro se* when she filed her first, unverified charge, the regulation the Court relied on does not contain such a requirement.  *See* 29 C.F.R. § 1601.12(b).[4]  The *Williams* Court, moreover, did not expressly premise its holding on the fact that the plaintiff was *pro se* at the relevant time, and did

---

[4] 29 C.F.R. § 1601.12(b) reads,

Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.  *A charge may be amended to cure technical defects or omissions, including failure to verify the charge*, or to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.  A charge that has been so amended shall not be required to be redeferred.

*Id.*  (Emphasis added)

6

(4:13cv2435)

not read such a requirement into 29 C.F.R. § 1601.12(b).

The Court finds that Li's second verified filing cured her first, unverified filing.  As a result, the Court finds that Li exhausted her administrative remedies relevant to her Title VII claims.

## 2. Type of Discrimination Alleged

Defendants next argue that Li's Title VII claims are subject to dismissal because they fail to allege discrimination on the basis of race, color, religion, national origin, or sex.  ECF No. 4 at 10.  Li alleges that she was unlawfully discriminated against on the basis of "race, ethnicity, political belief, and/or expression of First Amendment Right to free speech, silence, or association."  ECF No. 1-1 at 5, ¶25.  Li argues that, because of her Chinese origin, she was singled out by Jiang, also of Chinese origin, to disseminate the email containing incendiary references about Japanese people to others in the Chinese community.  Id. at 4, ¶15.  Li's complaint describes "historical tension between the Chinese and the Japanese dating back to World War II."  Id. at 4, ¶15.  When Li declined to disseminate the email, Jiang referred to Li as a "betrayer."  Id. at 4, ¶¶16-18.  Li also asserts that there is no record of Jiang asking non-Chinese individuals to forward the email.  ECF No. 11 at 13.

Defendants argue that Li is impermissibly expanding the scope of her allegations of discrimination to include matters not covered under Title VII—political beliefs or First Amendment rights.  ECF No. 14 at 7.  Defendants contend Li does so "by arguing that her allegations of unlawful discrimination on the basis of 'political belief, and/or expression of First Amendment Right to free speech, silence, or association' are offshoots of her allegations of

(4:13cv2435)

unlawful discrimination on the basis of national origin." *Id*.  In support of their argument,

Defendants rely on *Stroud v. Delta Air Lines, Inc.*, 544 F.2d 892 (5th Cir. 1977).

In *Stroud*, the Fifth Circuit held that flight attendants could not maintain a Title VII claim

for sex discrimination based on allegations that the airline refused to hire married women.  *Id.* at

891.  The court found that married women were discriminated against on the basis of their

marital status, not sex, and thus could not bring a Title VII claim for sex discrimination.  *Id.* at

893-94.  The *Shroud* court explained that there were no male flight attendants at Delta with

which to compare treatment, and cited distinguishing case law that permitted a Title VII sex

discrimination claim when an airline refused to hire or retain married female flight attendants but

did hire or retain married male flight attendants.  *Id.* at 894.

In the instant case, Li alleges that Jiang singled her out because of her Chinese origin and

asked her to forward the email to others of Chinese origin.  ECF No. 1-1 at 4, ¶15.  Li contends

that Jiang did not ask non-Chinese individuals to disseminate the email.  ECF No. 11 at 13.

Therefore, unlike the plaintiffs in *Shroud*, Li aptly describes allegations of discrimination based

on an actionable trait—race or national origin.  Any other aspects of Li's discrimination claim

Defendants believe are outside the scope of Title VII may be revisited at a later time based on a

more established record.

### 3.  Proper Parties and Claims

The parties agree that Li may not sue Jiang under Title VII.  *See* ECF Nos. 4 at 6; 11 at 1.

Li states that she is suing YSU under Title VII and Jiang under Chapter 4112.  ECF No. 11 at 1.

Li's Title VII claim, therefore, will only proceed against YSU.

8

(4:13cv2435)

### B.  State Law Claims— Chapter 4112 and Defamation

#### 1.  YSU and Jiang in her Official Capacity

Defendants argue that the Court lacks jurisdiction over Li's state law claims against YSU and Jiang in her official capacity on the basis of sovereign immunity pursuant to the Eleventh Amendment.  ECF No. 4 at 6.  They contend that, as a state entity (YSU) or actor (Jiang), Defendants may be sued only in the Ohio Court of Claims, absent waiver of immunity pursuant to Ohio Revised Code § 2743.02.  Id. at 6-7.  Li does not dispute Defendants' statement of the law.  Instead, she argues that Defendants waived immunity when they removed the case to federal court.  ECF No. 11 at 11.

R.C. § 2743.02(A)(1) provides that the "state hereby waives its immunity from liability, . . . and consents to be sued [] in the court of claims created in this chapter[.]"  R.C. § 2743.03(A)(1) creates the Court of Claims, and provides that the Court of Claims has "exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code[.]"  The jurisdiction of the Court of Claims extends to state instrumentalities per R.C. § 2743.01(A).  *See Collins v. Univ. of Cincinnati*, 444 N.E.2d 459, 461 (Ohio Ct. App. 1981).  State universities, like YSU, have been held to be instrumentalities of the state.  *Id.*; *see also Conner v. Wright State Univ.*, 2013 WL 6835270, at *3 n.1 (Ohio Ct. App. Dec. 24, 2013); *Childs v. Koosed*, 928 F.2d 949, at *4 (6th Cir. 1991) (table opinion).  Thus, absent waiver, the Court lacks jurisdiction over Li's state law claims.

In support of her argument that Defendants waived immunity when they removed the case to the instant court, Li relies on *Lapidus v. Bd. of Regents of the Univ. Sys. of Georgia*, 535 U.S.

9

(4:13cv2435)

613 (2002).  In *Lapidus*, the United States Supreme Court found that the State of Georgia waived

its Eleventh Amendment immunity when it removed the case to federal court.  The plaintiff in

*Lapidus* sued the Georgia University System in state court, alleging that the defendants inserted

allegations of sexual harassment into his personnel files in violation of Georgia law and federal

law.  *Id.* at 616.  The Georgia state legislature, *via* statute, had waived immunity for claims

brought in state court.  *Id.*  The university removed the case to federal court and then sought

dismissal based on immunity—it argued that, although it could be sued in state court, it enjoyed

immunity in federal court.  *Id.* at 616-17.  The Supreme Court held that because the university

would have been subject to suit in state court, it could not simply remove the case to federal court

and dismiss the action.  The Court found that to hold otherwise would defeat one of the purposes

of immunity— "to avoid inconsistency, anomaly, and unfairness, and not . . .  selective use of

'immunity' to achieve litigation advantages."  *Id.* at 620.

> *Lapides* is readily distinguishable from the instant case.  In *Lapides*, the state was using

immunity to achieve a litigation advantage.  Knowing it did not enjoy immunity in state court,

Georgia removed the action to federal court to assert immunity.  In contrast, Defendants here

were immune in the state court in which this action was originally filed.  Thus, they achieve no

litigative advantage in removing the action to federal court.  The outcome is the same whether

the instant case is litigated in the Mahoning County Common Pleas Court or the instant

Court—the Ohio Court of Claims has exclusive jurisdiction over Li's state law claims against

YSU and Jiang in her official capacity.  *See also Dantz v. Am. Apple Group, LLC*, 123 Fed.

App'x. 702, 706-07 (6th Cir. 2005) (table) (holding *Lapides* did not apply to non-immunity cases

10

(4:13cv2435)

and stating, "[e]ven if *Lapides* did apply, the potentially unfair litigation tactics the Court was

concerned with in *Lapides* are not present in this case.  There is no evidence that an Ohio state

court would have treated this case any differently than the federal court would have.").

 Accordingly, the Court dismisses the state law claims asserted against YSU and Jiang in

her official capacity because it lacks jurisdiction over these claims.  *See McCormick v. Miami*

*Univ.,  2011 WL 1740018, at \*18 (S.D.Ohio May 5, 2011)* (Chapter 4112 claims against

university officials sued in their official capacity barred in federal court by Eleventh Amendment

immunity, citing *Turker v. Ohio Dep't of Rehab. and Corr.*, 157 F.3d 453, 457 (6th Cir. 1998)).

### 2.  Jiang in Her Individual Capacity

 Defendants also assert that the Court lacks jurisdiction over claims against Jiang in her

individual capacity.  They argue that, pursuant to R.C. §§ 9.86 and 2743.02(F), the Ohio Court of

Claims must first determine whether Jiang is entitled to personal immunity.  ECF No. 4 at 8-9.

 R.C. § 9.86 provides, in relevant part,

> no officer or employee shall be liable in any civil action that arises under the law
> of this state for damage or injury caused in the performance of his duties, unless
> the officer's or employee's actions were manifestly outside the scope of his
> employment or official responsibilities, or unless the officer or employee acted
> with malicious purpose, in bad faith, or in a wanton or reckless manner.

 R.C. § 2743.02(F) states,

> A civil action against an officer or employee ... that alleges that the officer's or
> employee's conduct was manifestly outside the scope of the officer's or
> employee's employment or official responsibilities, or that the officer or employee
> acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall
> first be filed against the state in the court of claims, which has exclusive, original
> jurisdiction to determine, initially, whether the officer or employee is entitled to
> personal immunity under section 9.86 of the Revised Code . . .

11

(4:13cv2435)

Accordingly, the Court lacks jurisdiction over Li's state law claims against Jiang in her individual capacity.  *See McCormick*, 2011 WL 1740018, at *18 ("Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86[,]" quoting *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989)).  Li's state law claims against Jiang in her individual capacity are dismissed.

### C.  42 U.S.C. § 1983 Claims

#### 1.  YSU and Jiang in Her Official Capacity

Defendants assert that Li's section 1983 claims against YSU and Jiang in her official capacity must be dismissed because YSU is not a "person" within the meaning of section 1983. ECF No. 4 at 10.  They also argue that Eleventh Amendment immunity bars the claims.  *Id*.  Li argues that Defendants waived immunity when they removed the case to federal court and that YSU may be liable under the *Monell* doctrine.  ECF No. 11 at 14.

Section 1983 provides that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Section 1983 claims may not be brought against instrumentalities of a state, such as state universities.  *See Russell v. Univ. of Toledo*, 537 F.3d 596, 610 (6th Cir. 2008).  Li's claims against YSU and Jiang in her official

(4:13cv2435)

capacity are, therefore, dismissed.[5]

Li also fails to identify legal authority establishing that the doctrine of municipal liability established in *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978) attaches to YSU.  Case law suggests that *Monell* liability does not attach to YSU.  *See Stack v. Karnes*, 750 F.Supp.2d 892, 896-97 (S.D.Ohio 2010) (considering the history of *Monell* liability as applied to municipalities and local governments and identifying the difference between local governments and "arm[s] of the state.").  Additionally, Li's complaint fails to allege a policy, custom, or any trace of a *Monell* theory of liability.  As a result, Li's purported section 1983 claim against YSU under a *Monell* theory of liability is dismissed.

### 2.  Jiang in Her Individual Capacity— Qualified Immunity

Defendants argue that Jiang is entitled to qualified immunity on Li's section 1983 claims against Jiang in her individual capacity.  ECF No. 4 at 11.  Defendants assert that Li has failed to show that the right in question was "clearly established" as required to defeat a qualified immunity defense.  ECF No. 4 at 12.

The qualified immunity defense "shields governmental officials performing discretionary functions [] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  An official may be held liable if her action was not "objectively reasonable in light of the legal rules that were

---

[5]  Moreover, for the reasons explained, *supra*, the Eleventh Amendment bars Li's section 1983 claims and removal did not constitute a waiver of immunity.

(4:13cv2435)

'clearly established' at the time it was taken." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

In order to show that a right is clearly established, a plaintiff must "point[] to either 'controlling authority' or 'a robust consensus of cases of persuasive authority'" establishing the existence of the particular right at issue. *Hidden Village LLC v. City of Lakewood*, 734 F.3d 519, 529 (6th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (2011)).  The inquiry "must be undertaken in light of the specific context of the case." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012).  The unlawfulness of the action "can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Yoder v. Univ. of Louisville*, 526 Fed. App'x 537, 545 (6th Cir. 2013)(table) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  If officials of "reasonable competence could disagree" about the lawfulness of an action, the defendant is entitled to qualified immunity. *Id.* at 544-45 (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

Defendants admit that it is clearly established that a public employer may not take an adverse action against a public employee who has spoken on a matter of public concern when her interest in speaking publicly outweighs the employer's right to promote efficiency in the workplace.  ECF No. 4 at 13.  Defendants argue, however, that "there is no allegation that Jiang retaliated against Li for anything that [Li] spoke or otherwise communicated." *Id.*  Defendants further submit that Li does not allege that Jiang "compelled" her to do anything—only that Jiang "asked" Li to forward the email message and "urged" Li not to buy Japanese products. *Id.* at 13-14.  Therefore, Defendants maintain, Li has not described acts that would fall under the category

14

(4:13cv2435)

of "compelled speech."  *Id.* at 13-15.

Li does not respond to Defendants' arguments regarding compelled speech.  Instead, Li cites the Supreme Court decision *Elrod v. Burns*, 427 U.S. 347 (1976), which she describes as announcing "that the politically-motivated discharge of a government employee violates the First Amendment unless the government employee's job is a policy making decision."  ECF No. 11 at 15.  Li asserts, "[t]hat should satisfy the burden that the defendants posit is on Dr. Li 'to point to decisions of the United States Supreme Court [] in which a [First] Amendment violation was found in the context at issue here.'"  *Id.*

In *Elrod*, *Branti v. Finkel*, 445 U.S. 507 (1980) and *Rutan v. Republican Party*, 497 U.S. 62 (1990), the Supreme Court established the boundaries of "political patronage" cases—when political affiliation is inappropriately considered in an adverse employment action.  *Id.* at 65, 79.  *Elrod*, *Branti* and *Rutan* involved plaintiffs who suffered adverse employment actions because they belonged to a different political party than their superiors.  *See Elrod*, 427 U.S. at 350-351 (Republican sheriff replaced by a Democrat, who then conditioned continuing employment on employees' affiliation with the Democratic Party); *Branti*, 445 U.S. at 509-510 (newly appointed public defender, a Democrat, sent termination notices to only those assistants who were members of the Republican Party); *Rutan*, 497 U.S. at 65-67 (Republican governor instituted a hiring freeze absent express permission; only members of the Republican party were the beneficiaries of the governor's express permission).

Defendants argue that "[t]he present case does not involve a patronage dismissal."  ECF No. 14 at 10.  To the extent Defendants' argument is based on the word "dismissal," other

(4:13cv2435)

employment decisions, such as "promotion, transfer, recall, and hiring" are also subject to the

rule articulated in the political patronage cases. *See* Rutan, 497 U.S. at 79. Defendants also

submit that "[p]olitical party affiliation is not involved" in the instant case. ECF No. 14 at 10.

> The Sixth Circuit, however, has stated,

> Although *Branti* concerned membership in different political parties, the
> underlying rationale has been understood by this circuit to apply to any political
> difference; thus, political affiliation is not limited to membership in a political
> party and includes commonality of political purpose and support of political
> candidacy. *McCloud v. Testa*, 97 F.3d 1536, 1548 (6th Cir. 1996) ("dicta and
> holdings in our own circuit strongly and nearly without exception support the
> concept of applying the ban on patronage employment practices to
> non-ideological factions within the same party").

Smith v. Sushka, 117 F.3d 965, 970 n.6 (6th Cir. 1997). The email sent by Jiang described

opinions and acts that could reasonably be said to constitute a political purpose. The fact that,

at this early stage in the litigation, a cognizable political party affiliation is not evident does not

render the political patronage cases inapplicable.

Defendants also assert that the *Elrod* line of cases is inapplicable because there was no

"*quid pro quo*"—in other words, Jiang did not force Li to disseminate the email as a condition of

Jiang's support. ECF No. 14 at 10. However, "there is no requirement that dismissed employees

prove that they [] have been coerced into changing, either actually or ostensibly, their political

allegiance." Branti, 445 U.S. at 517; *see also* O'Hare Truck Service, Inc. v. City of Northlake,

518 U.S. 712, 721 (1996) (city tow truck operator declined to make a contribution to mayor's re-

election campaign and was taken off the city tow list; "[w]e see nothing to distinguish this from

the coercion exercised in our other unconstitutional conditions cases[,]" citing *Keyishian v. Bd.

of Regents of Univ. of State of N.Y.*, 385 U.S. 589 (1967); *Perry v. Sindermann*, 408 U.S. 593

16

(4:13cv2435)

(1972)).

Finally, Defendants argue that Jiang lacked authority to terminate Li's employment because Li's tenure denial was "subject to multiple levels of review before the YSU president made the final tenure decision." ECF No. 14 at 10. This argument is unavailing. Li alleges that Jiang recommended against Li's tenure and sent "three pages of broad and false allegations about Dr. Li's job performance, work, and ethics" to the Dean. ECF No. 1-1 at 4. Thus, Li has alleged that Jiang encouraged and participated in the adverse employment action. *See Lupo v. Voinovich, 235 F.Supp.2d 782, 797 (S.D.Oh. 2002)* (individual section 1983 liability may be imposed when there is evidence indicating the individual "encouraged, participated in, implicitly authorized or knowingly acquiesced in any of the allegedly unconstitutional conduct."). Because Li has pointed to "'controlling authority' or 'a robust consensus of cases of persuasive authority'" establishing the existence of the particular right at issue, Jiang is not entitled to qualified immunity. *See Hidden Village, 734 F.3d at 529*.

### D. Plausibility of Li's Complaint

Defendants argue that Li's claims are implausible and, therefore, do not meet the standard for plausibility set forth in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)* and *Ashcroft v. Iqbal, 556 U.S. 662 (2009)*. ECF No. 4 at 15-16. They cite *Sam Han v. Univ. of Dayton, 541 Fed.App'x 622 (6th Cir. 2013)*, in support. ECF No. 7 (Notice of Filing Supplemental Authority). In *Sam Han*, an Asian-American male was hired by the University of Dayton in a non-tenured position. 541 Fed.App'x at 625. Despite positive reviews, the Promotion, Retention and Tenure Committee did not renew his contract. *Id*. He sued, claiming the decision was a

17

(4:13cv2435)

result of race and gender discrimination.  *Id.*

The Sixth Circuit affirmed the district court's dismissal of his complaint because the "complaint does not plead sufficient facts to state claims of race and gender discrimination that are plausible on its face." *Id.* at 626.  That Court stated that the plaintiff "provides no facts that would allow a court to infer that the adverse employment action at issue was a result of his race or gender." *Id.*  It explained that it "is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts alleged in the complaint." *Id.* at 627.

In the instant case, unlike in *Sam Han*, Li has pleaded factual allegations that would allow a court to infer that the adverse employment action was a result of discrimination based on national origin or the right of free association.  *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678.  Li alleges that Jiang singled her out because of her Chinese origin and requested she forward an inflammatory email to others in the Chinese community.  When Li did not do so, Li alleges that Jiang: berated her; made verbal and written communications to the Dean that included false accusations about Li; recommended Li not be granted tenure (despite Jiang previously congratulating Li on the unanimous faculty vote to award tenure); and that Li was thereafter denied tenure.  *See* ECF No. 1-1.  Li's claims are plausible under the *Twombly/Iqbal* standard, and survive Defendants' motion.

### E.  Claims for Respondeat Superior and Punitive Damages

Li asserts claims for respondeat superior and punitive damages.  ECF No. 1-1 at 7-8. Defendants argue that these are not viable independent legal claims, but, respectively, a legal doctrine that rests on an underlying theory of wrongdoing and a remedy.  ECF No. 4 at 17.  Li, in

(4:13cv2435)

opposition, agrees with Defendants' characterization.  ECF No. 11 at 16.  Accordingly, to the

extent the complaint purports to assert independent legal claims for respondeat superior and

punitive damages, these claims are dismissed.

### IV.  Conclusion

For the reasons explained above, the Court grants in part and denies in part Defendants'

Motion for Judgment on the Pleadings, ECF No. 4.  The Court grants Li's Motion to Supplement

Complaint *Instanter*, ECF No. 10.

Accordingly:

• Li's Title VII claim against Jiang is dismissed with prejudice.

• All state law claims against YSU and Jiang are dismissed without prejudice.

• Li's section 1983 claims against YSU and Jiang in her official capacity are
  dismissed with prejudice.

• Jiang is not entitled to qualified immunity on Li's section 1983 claim against
  Jiang in her individual capacity.

• To the extent Li asserts independent legal claims of respondeat superior and
  punitive damages, these claims are dismissed.

The case will proceed solely on Li's Title VII claim against YSU and Li's section 1983

claim against Jiang in her individual capacity.

IT IS SO ORDERED.


August 13, 2014                           */s/ Benita Y. Pearson*
Date                                      Benita Y. Pearson
                                          United States District Judge

19